**State of Louisiana**
**Secretary of State**

09/13/2023

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

UNDERWRITERS AT LLOYD'S, LONDON
C/O LLOYD'S AMERICA, INC.
ATTN: BARBARA DEMOSTHENE, LITIGATION COUNSEL
280 PARK AVENUE, EAST TOWER, 25TH FLOOR
NEW YORK, NY 10017

Suit No.: 202211812
CIVIL DISTRICT COURT
ORLEANS PARISH

CHATEAU MANAGEMENT LLC, ET AL
vs
UNDERWRITERS AT LLOYD'S, LONDON, ET AL

Dear Sir/Madam:

I am enclosing a citation served in regard to the above entitled proceeding. If you are not the intended recipient of this document, please return it to the above address with a letter of explanation. All other questions regarding this document should be addressed to the attorney that filed this proceeding.

Yours very truly,

R. KYLE ARDOIN
Secretary of State

Served on:  R. KYLE ARDOIN                    Date: 09/12/2023
Served by:  B GARAFOLA                        Title: DEPUTY SHERIFF

No: 1300344

**EXHIBIT**

**A**

KS

ATTORNEY'S NAME:   Betzer, Bruce C 26800
AND ADDRESS:        3129 Bore Street , Metairie, LA 70001

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO: 2022-11812          DIVISION: L          SECTION: 06

**CHATEAU MANAGEMENT LLC  ET AL**

SERVED ON
R. KYLE ARDOIN

**Versus**

SEP 12 2023

**UNDERWRITERS AT LLOYD'S, LONDON  ET AL**

SECRETARY OF STATE
COMMERCIAL DIVISION

### CITATION

TO:         UNDERWRITERS AT LLOYDS OF LONDON

THROUGH:    ITS SERVICE OF PROCESS FOR SERVICE: LOUISIANA SECRETARY OF STATE

            8585 ARCHIVES AVENUE, BATON ROUGE, LA 70809

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

PETITION FOR DAMAGES w/CASE MANAGEMENT ORDER

a certified copy of which accompanies this citation, or file an answer or other legal pleading within the delay
provided by Civil Code of Procedure Article 1001. The mentioned article is noted on the back of this page for
your reference. You may make your filing in the office of the Clerk of this Court, Room 402, Civil Courts
Building, 421 Loyola Avenue, New Orleans, LA 70112.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may contact the New
Orleans Lawyer Referral Service at https://neworleansbar.community.lawyer/. This Referral Service
operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to
free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-
1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA August 23, 2023**

Clerk's Office, Room 402                  CHELSEY RICHARD NAPOLEON, Clerk of
Civil Courts Building                     The Civil District Court
421 Loyola Avenue                         for the Parish of Orleans
New Orleans, LA 70112                     State of LA
                                          by _____
                                          Tyme Jones, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____, _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| PETITION FOR DAMAGES w/CASE MANAGEMENT ORDER | PETITION FOR DAMAGES w/CASE MANAGEMENT ORDER |
| ON  UNDERWRITERS AT LLOYDS OF LONDON | ON  UNDERWRITERS AT LLOYDS OF LONDON |
| THROUGH:  ITS SERVICE OF PROCESS FOR SERVICE: LOUISIANA SECRETARY OF STATE | THROUGH:  ITS SERVICE OF PROCESS FOR SERVICE: LOUISIANA SECRETARY OF STATE |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said UNDERWRITERS AT LLOYDS OF LONDON  being absent from the domicile at time of said service. |
| No. _____ | |
| Deputy Sheriff of _____ | Returned the same day |
| Mileage: $ _____ | No. _____ |
| _____ / ENTERED / _____ | Deputy Sheriff of _____ |
| PAPER               RETURN | |
| _____ / _____ / _____ | |
| SERIAL NO.     DEPUTY     PARISH | |





CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

SECTION 6

STATE OF LOUISIANA

NO. 2022-11812                                          DIVISION " "

HURRICANE LITIGATION

CHATEAU MANAGEMENT LLC and CHATEAU MAGIC NOLA LLC

versus

UNDERWRITERS AT LLOYD'S, LONDON AND EAGAN INSURANCE AGENCY, LLC

_____

PETITION FOR DAMAGES

Petitioners CHATEAU MANAGEMENT LLC and CHATEAU MAGIC NOLA LLC by

and through its undersigned counsel, hereby file suit against Defendants, Underwriters at Lloyd's,

of London and Eagan Insurance Agency, LLC, and alleges, upon information and belief, the

following:

I.   NATURE OF THE ACTION

1.

CHATEAU MANAGEMENT LLC and CHATEAU MAGIC NOLA LLC seek to recover

from Defendants all damages, penalties, fees, interest, and other relief to which they are legally

entitled arising from Defendant's failure to promptly and fully pay benefits owed under its

commercial Properties policy issued to CHATEAU MANAGEMENT LLC and CHATEAU

MAGIC NOLA LLC for losses arising from Hurricane Ida that made landfall in Southeast

Louisiana on August 29, 2021 and caused significant damage to Petitioners' buildings located in

the historic Marigny of New Orleans.

II. PARTIES, JURISDICTION AND VENUE

2.

Made Petitioners herein are CHATEAU MANAGEMENT LLC and CHATEAU MAGIC

NOLA LLC ("Petitioners"), Louisiana limited liability companies organized under the laws of

Louisiana and doing business in Orleans Parish.

3.

Made Defendant herein is Underwriters at Lloyd's, London ("Lloyd's" or "Defendants") a

1

foreign insurance company authorized to do and doing business in the State of Louisiana and the Parish of Orleans, which may be served through its Registered Agent for Service of Process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

4.

Made Defendants herein is Eagan Insurance Agency ("Eagan Insurance"), a Louisiana based LLC and authorized to do and doing business in the State of Louisiana and the Parish of Orleans, which may be served through its Registered Agent for Service of Process, Maurice F. Eagan, Jr. 2629 N. Causeway Metairie, LA 70002.

5.

Jurisdiction is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure Article 2 and 6.

6.

Venue is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure Article 76 because a substantial part of the events and/or omissions giving rise to the claims occurred in Orleans Parish; the Properties that is subject to the insurance claim dispute is located in Orleans Parish; and/or the Loss and/or Properties Damage at issued occurred in Orleans Parish.

### III. RELEVANT FACTS

A. **The Lloyd's Policy**

7.

At all relevant times hereto, Petitioners own several commercial properties located in the historic Marigny of New Orleans (collectively, the "Properties"), specifically:

    a.  523 Mandeville Street New Orleans, LA 70117; ("523 Mandeville");

    b.  527 Mandeville Street New Orleans, LA 70117; ("527 Mandeville")

    c.  533 Mandeville Street New Orleans, LA 70117 ("533 Mandeville");

    d.  2418 Chartres Street New Orleans, LA 70117 ("2418 Chartres") which has an attached "pool house,"

    e.  2420 Chartres Street New Orleans, LA 70117 ("2420 Chartres")

        i.  2422 Chartres Street New Orleans, LA 70117 (formerly known as 2420 Chartres)

    ii.  2424 Chartrès Street New Orleans, LA 70117(formerly known as 2420 Chartres)

8.

At all relevant times hereto, the agent, believed to be Jordan Eagan, with Eagan Insurance Agency, which had acted as Plaintiffs' agent for business insurance over the years, procured a policy issued by Lloyds of London without doing a proper investigation of the Properties.

9.

At all relevant times hereto, Defendant, Lloyds, provided to Petitioners a commercial policy of insurance, bearing Policy Certificate No. JTA450577 (the "Policy"), which had a policy period of December 29, 2020 through December 29, 2021, which covered the Properties against perils including hurricanes, wind, hail and/or water. Defendants placed a valuation upon the covered Properties and used this valuation for purposes of determining the premium charge under the Policy at issue.

10.

Coverage under this policy, which was procured by Jordan Eagan, is described as follows: "business description:" single family dwellings, pool house and garage. The Policy provided the following coverages for each of the Properties:

    a)  527 Mandeville Street – alternatively "unattached pool house"

        i.  Building Properties damage: $697,000

        ii.  Named Storm Deductible: 2% with $2,500 minimum

        iii.  Class Description - Dwellings - one-family (lessors risk only)

    b)  523 Mandeville Street

        i.  Building Properties damage: $320,000

        ii.  Named Storm Deductible: 2% with $2,500 minimum

        iii.  Class Description - Dwellings - one-family (lessors risk only)

    c)  533 Mandeville Street New Orleans, LA 70117

        i.  Building Properties damage: $225,000

        ii.  Named Storm Deductible: 2% with $2,500 minimum

        iii.  Class Description - Dwellings - one-family (lessors risk only)

    d) 2418 Chartres Street (attached "pool house")

        i.   Building Properties damage: $433,000

        ii.   Named Storm Deductible: 2% with $2,500 minimum

        iii.   Class Description – Warehouse - private

    e) 2420 Chartres Street (2422 Chartres Street and 2424 Chartres Street)

        i.   Building Properties damage: $825,000

        ii.   Named Storm Deductible: 2% with $2,500 minimum

        iii.   Class Description - Dwellings - three-family (lessors risk only)

**B.**   **Damage Caused by Hurricane Ida and Lloyd's Inadequate Investigation, Misrepresentation, Delays, Untimely Payments, and Failure to Pay Damages**

11.

Defendants, despite including the pool house building in the business description on The Policy, failed to properly inspect the Properties and single out the "attached pool house" as an additional insured building to Petitioners' policy.

12.

On or around August 29, 2021, when the Policy was in full force and effect, Hurricane Ida made landfall in Southeast Louisiana as a powerful Category 4 hurricane with maximum sustained wind speeds of 150 mph.[1] As a Category 4 storm with intense hurricane-force winds, Ida caused major damage to buildings throughout Southeast Louisiana, including the greater New Orleans area and surrounding parishes.

13.

Hurricane Ida caused significant damage to the properties, damaging the roofs, exteriors interiors of the properties, allowing water to infiltrate the interior as a direct result of the roof damage and otherwise causing significant damage to and throughout the Properties ("the Loss" or "Properties Damage") which was covered under the Policy. The most severe wind damage was to the Pool house. The pool house roof was blown off as well as the exterior walls, exposing the interior of the building.

---

[1] https://www.weather.gov/lix/hurricaneida2021

4

14.

The pool house is physically attached to 2418 Chartres Street and is situated in the yard of 527 Mandeville St., both buildings owned by Petitioners.

15.

The Properties therein were significantly damaged by and suffered a diminution in value as a result of Hurricane Ida.  This significant Hurricane Ida damage to the Properties occurred prior to any purported damage to the Properties by any non-covered peril, including any type of damage purportedly excluded by the policy.

16.

Petitioners reported the Loss to Lloyd's through its third-party claim administrator, Defendant, Eagan Insurance Agency, that the properties had sustained losses because of Hurricane Ida. Eventually, the claim was transferred to Adaire Horne & Associates and assigned Claim Number 211456 to the Properties.

17.

On or around October 13, 2021, Adaire Horne & Associates, acting on behalf of Lloyd's, hired an independent adjuster that came out to inspect and document the damage to the Properties. On this date, Lloyd's received satisfactory proof of loss.

18.

Adaire Horne & Associates inspection of the Properties constituted satisfactory proof of loss, as the term is used in conjunction with Louisiana's bad faith statutes, La. R.S. §§ 22:1892 and 22:1973.

19.

After over-depreciating the loss, improperly measuring the Properties, and applying the Policy's deductible to the Properties, Adaire Horne & Associates, acting on behalf of Lloyd's, tendered $3,977.43 for 2420 Charters Street & $1,628,58 for 527 Mandeville Street, but did not tender any payments for Petitioners' other properties due to "no observed wind damage to the insured building and the pool house claim because it was not covered under the policy."

20.

Upon information and belief, the independent adjuster did not inspect every address listed

as covered under the policy.

21.

In denying Petitioner's claims for the Properties, Lloyd's relied on these unfounded conclusions of its experts:

a.     527 Mandeville Street did not sustain wind driven water damage to its roof, interior and exterior.

b.     There was no coverage for the Pool House, which was attached to 2418 Chartres, therefore the adjuster did not document the loss.

c.     523 Mandeville, 533 Mandeville, 2418 Chartres, did not sustain wind damage, although no adjuster on behalf of Lloyd's inspected any the loss locations.

22.

As a result of Lloyd's failure to timely and adequately compensate Petitioners for their covered losses to the Properties, Petitioners were forced to incur the expense of retaining counsel and other expenses to prosecute their claims.

23.

On or around May 12, 2022, Petitioners had an independent adjuster, JAGG Claims, LLC ("JAGG"), inspect the Properties and create a report documenting and detailing the damage from Hurricane Ida. The following amounts were owed by Defendant for repair, damages and/or reimbursement:

a.          $45,056.40 in Property Damage for 527 Mandeville;

b.          $34,980.06 Property Damage for 523 Mandeville;

c.          $41.302.67 in Property Damage for 533 Mandeville;

d.          $133,154.18 in Property Damage for 2418 Chartres and the attached pool house.

24.

On May 17, 2022, Petitioners submitted the report to Adaire Horne & Associates and receipt was acknowledged by an representative of Adaire Horne, including line-item estimates extensively detailing and documenting the Properties Damage, with a demand for the release of unconditional tenders.

25.

This submission constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La. R.S. §§ 22:1892 and 22:1973.

26.

By May 17, 2022, Lloyd's had sufficient information to act on Petitioners' claims for Hurricane Ida damage to the Properties.

27.

Since the submissions to Adaire Horne & Associates on May 17, 2022, Lloyd's has neither paid anything for the losses at 527 Mandeville, 523 Mandeville, 533 Mandeville, 2418 Chartres and the pool house nor has it made an unconditional tender toward undisputed portions of the claim for 527 Mandeville, 523 Mandeville, 533 Mandeville, 2418 Chartres and the pool house.

28.

Plaintiffs attempted to recover the remaining amount of the covered damages and/or insurance proceeds due from Defendant to no avail.

29.

Defendant's failure to comply with the terms of its own Policy caused and continues to cause significant delays to repair the Properties as well as additional general and/or special damages to Plaintiffs.

30.

Upon information and belief, relative to the Properties\Damage and/or Claim at issue, Defendants purposely and/or negligently: a) failed to properly inspect Properties and single out the "attached pool house" as an additional insured building to Petitioners' policy b) failed to timely tender proceeds due after having received satisfactory proof of loss; c) misrepresented the terms and conditions of the Policy at issue; d) conducted the investigation and claims handling in bad faith; e) manipulated and/or set its pricing software to artificially suppress the cost of repairs below market value; f) failing to adequately pay for losses as required by the Policy, and/or g) failed to include adequate overhead and profit in its estimates of damages.

31.

Plaintiffs incurred and will continue to incur additional expenses and/or delays in making

repairs because Defendant's failed to timely pay for losses due under the Policy and/or for the Claim at issue.

32.

Plaintiffs incurred professional expenses, including expert and/or attorney's fees, to determine and/or prove that Defendants wrongfully failed to adequately/timely pay on the Claim at issue.

33.

Plaintiffs sustained and continue to sustain mental anguish and/or inconvenience because Defendant failed to timely pay for losses due under the Policy and/or for the Claim at issue.

**CAUSE OF ACTION – Breach of Insurance Contract**

34.

All allegations contained in this Petition are hereby adopted and re-alleged.

35.

Despite having adequate proof of loss, Defendant, Lloyd's, failed to timely tender adequate funds under the Policy.

36.

At all material times herein, an insurance contract, the Policy, existed between Plaintiffs and Defendant, Lloyd's, which provided coverage for the Properties Damage and/or the Hurricane Ida Claim at issue herein.

37.

Upon information and belief, Defendant breached the Policy and/or insurance contract by purposely and/or negligently: a) failed to properly inspect Properties and single out the "attached pool house" as an additional insured building to Petitioners' policy b) failed to timely tender proceeds due after having received satisfactory proof of loss; c) misrepresented the terms and conditions of the Policy at issue; d) conducted the investigation and claims handling in bad faith; e) manipulated and/or set its pricing software to artificially suppress the cost of repairs below market value; f) failing to adequately pay for losses as required by the Policy, and/or g) failed to include adequate overhead and profit in its estimates of damages.

8

38.

Plaintiffs suffered and continue to suffer general, special and/or consequential damages as a result of Defendant's breaches of the insurance contract.

**CAUSE OF ACTION – Bad Faith**

39.

All allegations contained in this Petition are hereby adopted and re-alleged.

40.

The actions and/or inactions of Defendant in failing to adequately compensate Plaintiffs for the covered losses under the Policy were arbitrary, capricious, and without probable cause - as those terms are used in conjunction with La. R.S. §§ 22:1892 and 22:1973, making Defendants liable for statutory bad faith penalties.

41.

Under La. R.S. § 22:1973, an insurer owes a good faith duty and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. § 22:1973.

42.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of La. R.S. § 22:1973.

43.

La. R.S. § 22:1892 imposes bad faith penalties on insurers who fail to; a) adequately pay claims following satisfactory proof of loss within thirty (30) days, or b) make a written offer to settle any Properties damage claim within thirty (30) days after receipt of satisfactory proofs of loss of that claim.

44.

Defendant is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to provide Plaintiffs adequate payment in connection with the Properties Damage and/or the Claim, despite having received satisfactory proof of loss following its own inspection(s) of the Properties, and/or

9

after Plaintiffs provided expert documentation of the Properties Damage and/or the Claim. Moreover, Defendant's failure to timely tender adequate payment was unjustified, and without reasonable or probable cause or excuse.

45.

Defendant is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to make a written offer to settle the Properties Damage and/or the Claim within thirty (30) days after receipt of satisfactory proofs of loss of the Properties Damage and/or the Claim.

46.

Upon information and belief, relative to the Properties Damage and/or Claim at issue, Defendant acted in bad faith by arbitrarily and capriciously: a) failing to timely tender proceeds due after having received satisfactory proof of loss; b) misrepresenting the terms and conditions of the Policy at issue; c) conducting the investigation and claims handling in bad faith; d) manipulating and/or setting its pricing software to artificially suppress the cost of repairs below market value; and/or e) failing to adequately and/or timely pay insurance proceeds as required by the Policy and the relevant statutes, f) failing to make a written offer to settle within thirty (30) days after receipt of satisfactory proofs of loss of the Claim, and/or h) failing to include adequate overhead and profit in its estimates of damages.

47.

Upon information and belief, further evidence of Defendant's bad faith will be revealed through the discovery process.

48.

Plaintiffs suffered and continue to suffer general, special and/or consequential damages as a result of Defendant's bad faith.

**DAMAGES**

49.

All allegations contained in this Petition are hereby adopted and re-alleged.

50.

Defendants are liable to Plaintiffs, relative to the Properties Damage and/or Claim at issue, under the following legal theories: a) Breach of contract; b) Bad faith and/or negligent claims

10

adjusting practices, including but not limited to failing to adequately adjust the Properties Damage and/or the Claim, misrepresentation of the terms of the applicable insurance Policy, purposeful and/or negligent under-scoping of damages leading to a failure to pay the relevant claims, purposeful and/or negligent price manipulation leading to a failure to pay the relevant claims, failure to pay timely for covered damages Defendant knew, or should have known existed at the time of the original adjustment/inspection as well as at the time of Defendants' receipt of the Expert Report, failing to timely tender adequate supplemental payment(s), etc., leading to various general, special and/or consequential damages, including but not limited to delayed and/or additional repair costs, mental anguish, inconvenience, and the incurrence of professional and/or expert fees; c) Any and all other legal theories of recovery that become apparent during the discovery process and proven at the trial of this matter.

51.

As a result of Defendant's breaches of contract, bad faith claims adjusting, and other bad acts, Plaintiffs has incurred and/or sustained the following, non-exclusive damages: a) Diminution of the value of the Properties; b) Underpayment and/or delayed payment of covered damages/repair costs, c) Actual repair costs, temporary repair costs, as well as increased repair costs; d) Loss of use and/or additional living expenses, e) Personal Properties damage; f) Penalties delineated in La. R.S. §§ 22:1892 and 22:1973; g) Mental anguish and/or inconvenience; h) Attorneys' fees, other professional fees, and litigation costs associated with the bringing of this action; i) Other general, special and/or consequential damages; and j) Any and all other damages that are shown through discovery and/or proven at the trial of this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that Defendants be duly cited and served, and that after due requirements and proceedings, there be judgment against Defendants in favor of Plaintiffs in such sums as the Court deems just, together with legal interest, costs, and all general and equitable relief allowed.  Further, Plaintiffs pray for relief and judgment against the Defendants, as follows:

1. Compensatory, general and/or contractual damages;

2. Consequential and/or special damages, including but not limited to those incurred as a result of Defendant's bad faith;

11

3. Penalties as a result of Defendant's bad faith;

4. Attorneys' fees as a result of Defendant's bad faith;

5. Prejudgment interest at the highest lawful rate allowed by law;

6. Interest on the judgment at the highest legal rate from the date of judgment until

collected;

7. All expenses, expert fees and costs of this action; and

8. Such further relief as this Court deems necessary, just and proper.

                              RESPECTFULLY SUBMITTED:


                              _____
                              Bruce C. Betzer, Bar No.: 26800
                              The Law Office of Bruce C. Betzer
                              A Professional Limited Liability Company
                              3129 Bore Street
                              Metairie, Louisiana 70001
                              Telephone: (504) 832-9942
                              Facsimile: (504) 304-9964
                              Email: bruce@brucebetzer.com
                              **Service Email:** service@brucebetzer.com

**PLEASE SERVE THIS PETITION AS WELL AS THE ATTACHED CASE**
**MANAGEMENT ORDER ON THE FOLLOWING:**

**Underwriters at Lloyds of London**
Through its Service of Process for Service:
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

&

**Eagan Insurance Agency**
Through its Registered Agent for Service:
Maurice F. Eagan, Jr.
2629 N. Causeway
Metairie, LA 70002

A TRUE COPY

_Gale Dure_

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

IN RE: HURRICANE IDA CLAIMS 

2022-03492

SECTION 15

STATE OF LOUISIANA ~~FILED~~

PARISH OF ORLEANS APR 21 AM 11: 32

CIVIL DISTRICT COURT CIVIL
DISTRICT COURT

DEPUTY CLERK

## CASE MANAGEMENT ORDER
### REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

On August 29, 2021, Hurricane Ida came ashore near Port Fourchon, Louisiana and left destruction throughout south Louisiana as a major Category 4 Hurricane.[1] Major Hurricane-force winds, with gusts in excess of 192 mph inflicted catastrophic damage throughout south Louisiana and hurricane force winds impacted this Court's jurisdiction.[2] The causes of action arising therefrom may sometimes be referred to as "Hurricane Cases."[3]

In the aftermath of these catastrophic natural disasters, this Court recognizes the likelihood of a high volume of insurance coverage-related litigation linked to the Hurricane. In Act 318 of the 2021 Regular Session the Legislature of Louisiana amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[4]

Act 318 authorizes this court to issue this CMO, this Court finds it warranted to best accommodate the adjudication of Hurricane cases in this Court.[5] Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the New Orleans community to move forward with crucial recovery efforts, in the aftermath of the Hurricane and the ongoing Coronavirus pandemic.

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately

---

[1] https://www.theadvocate.com/baton_rouge/news/article_0cc1dc86-0a90-11ec-827e-6342102b8d5d.html
[2] https://www.theadvocate.com/baton_rouge/news/business/article_10bb5488-11d0-11ec-82c3-e3dd67be12ad.html    https://www.nbcnews.com/news/us-news/live-blog/hurricane-ida-live-updates-8-30-n1277989/ncrd1278026#liveBlogHeader
[3] All causes of action concerning damage related to Hurricane Ida is subject to this Order, including causes of action where the third-party demand or cross claim is a claim against an insurer by an insured due to damage from the Hurricane.
[4] Hurricane Ida qualifies pursuant to R.S. 13:4165(F)(1). A major disaster declaration was made by the President for Orleans Parish in Hurricane Ida under FEMA Release No. HQ-21-181. Orleans Parish qualified for individual assistance for the Hurricane (FEMA designation DR-4611-LA).
[5] Hurricane Ida ties Hurricane Laura for the strongest hurricane to hit Louisiana and the fifth strongest Hurricane to hit the United States. Act 318 was enacted in the aftermath of Hurricane Laura and this CMO is modeled extensively on the CMO successfully adopted by the 14th Judicial District Court following Hurricane Laura.

1

VERIFIED
04/21/2022

applicable to all Hurricane Cases currently pending or hereafter filed in this Court (Civil District Court for the Parish of Orleans).

## SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCLOSURES

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by the United States District Court for the Western District of Louisiana, applicable to all Hurricane Cases[6] and the nearly identical Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey.[7] These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an expedited mediation procedure.

Accordingly, this Court has adopted the Disaster Protocols attached hereto as Exhibit "A" in the Disaster Protocols Order and makes them applicable to all Hurricane cases filed in this Court. Additionally, **IT IS HEREBY ORDERED** that there shall be an automatic extension of time to Answer in every Hurricane case until the 30th day after service of the plaintiff's petition. No further extensions of time shall be granted except in exigent circumstances.

Additionally, **IT IS HEREBY ORDERED** that the disclosures and exchange of information required by the Disaster Protocols Order shall be due 45 days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline". Even if the parties agree to further extension of time to file responsive pleadings, the Disclosure Deadline shall be no more than 90 days from the service of the petition unless the extension of the Disclosure Deadline is expressly extended by the written consent of all parties or pursuant to an express Order of this Court to extend it.

**IT IS FURTHER ORDERED** that each party shall supplement their Initial Disclosures at least twenty-one days prior to any mediation pursuant to the CMO.[8]

**IT IS FURTHER ORDERED** that all other discovery is stayed until certification of the completion of the SSP. However, the Special Master may authorize limited formal

---

[6] https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1_Att_A_Dis covery_Protocols.062121.tzd_0.pdf
[7] *United States District Court for the Southern District of Texas*, Disaster Litigation Initial Discovery Protocols, *available at*
https://www.txs.uscourts.gov/sites/txs/files/Disaster%20FINAL%20Web%20version.pdf
[8] If the Special Master finds a production under the Disaster Disclosures too voluminous or disorganized to be useful for the SSP, he may require that the Disaster Disclosures be bates numbered and organized with a Table of Contents.

discovery during the SSP in extraordinary circumstances.[9]

## SECTION 2. PRIVILEGE

Documents for which a privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney.[10] However, as recognized by federal courts concerning hurricane cases "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[11]

Therefore, **IT IS FURTHER ORDERED that** any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis of that the material is privileged. The log should include: the author(s) of the document, the recipient(s) of the document (including direct recipients and recipients copied), indication (e.g., with an asterisk) of which individual(s) (authors and recipients) are attorneys (or paralegals or other legal staff carrying out a legal function for an attorney), the date of the document, subject line of the document, title of the document, the nature of any privilege(s) asserted, and a description of the document (over which a privilege is asserted) in a manner that, without revealing information itself privileged or protected, will enable the Special Masters and/or the Court to assess the claim.

Any dispute concerning privileged items shall be referred to the Special Master. If a motion to compel related to the privilege log is filed, or if any other privilege dispute is raised with the Special Master, the disputed items shall be provided to the Special Master *in camera* within ten days. The Special Master or his designated deputy shall provide all parties with a report and recommendation concerning the claimed privilege.

If neither party opposes the report and recommendation within seven days of its receipt then the Court may issue an Order confirming it. If either party opposes the report and

---

[9] The parties are encouraged to make requests for limited discovery in complex cases when necessary to effectively participate in the SSP outlined herein.
[10] La. C.C.P. art. 1424(A)
[11] United States District Court for the Western District of Louisiana, *In Re Hurricane Laura and Delta Cases: Case Management Order No. 1*, p. 3, *available at* https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1.012221.tzd.pdf
United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-ordes/14mc41cmo01.pdf.

recommendation within seven days of its receipt then the report shall be transmitted to the Court by the Special Master together with the *in camera documents*. The opposing party may file a memorandum concerning the report and recommendation within seven days of receiving the report, and any other party may file a response within five days of the filing of the opposition.

## SECTION 3. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction *infra*, the Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*, it is ordered that **THE COURT HEREBY APPOINTS E. JOHN LITCHFIELD, ESQ. AND CADE R. COLE, ESQ.** as the Special Masters for Hurricane Cases in the Orleans Civil District Court.

As part of their appointment, the Court mandates that the Special Masters shall proceed with all reasonable diligence and shall exercise their respective rights and responsibilities to direct the Streamlined Settlement Process as provided in this Order.

**IT IS FURTHER ORDERED** that the Neutrals, referenced in Section 4(II)(B), *supra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

### I.   *The Special Masters*

The Special Masters shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefing, engage in discovery, and attend settlement conferences. The Special Masters may enter any other order to effectuate the provisions of the SSP, subject to the review and control of the Court.

### II.   *Compensation of Appointed Neutrals*

The Special Masters and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

A. $400 per hour;

B. $280 per case for the Special Masters for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals; and

C. all actual expenses of the Appointed Neutrals, including but not limited to travel, meeting rooms, telephone, and electronic audio or video conference

4

means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Masters, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defense(s).[12] If the claim settles for $25,000 or less, then 100% of the above fees and expenses shall be paid by the defense(s).

**IT IS FURTHER ORDERED** that $70 of the administrative fee provided for in Section II(B) shall be added to the cost of filing the petition, collected by the clerk of court, and remitted monthly to the Special Masters; and that $210 of the administrative fee provided for in Section II(B) shall be added to the cost of the first notice or filing by the defendant, collected by the clerk of court, and remitted monthly to the Special Masters.

### III.   Role of Appointed Neutrals

A. The Special Masters and Appointed Neutrals may communicate *ex parte* with the Court when deemed appropriate by the Special Masters, at the Special Masters' discretion, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

B. The Special Masters and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

C. The Special Masters and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

D. The Special Masters may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Masters.

E. If an Appointed Neutral reports that a case did not settle due to a party's failure to comply with its obligations under the Disaster Protocols, including the obligation to supplement the Disaster Disclosures at least twenty-one (21) days prior to the mediation, the Special Master may order another mediation and may assess the full cost of the first mediation against the party in violation.

### IV.   Notice to the Special Masters.

Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP only for good cause shown within the applicable deadline (*see* Section 4 below). **IT IS FURTHER ORDERED** that any party filing an opt out motion shall copy the Special Masters, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Masters whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Masters of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where a counsel for the party has been provided a copy of this Order for a case for that party or any other party). The Special Masters shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

---

[12] In instances where an insurer of an insured has filed suit against the insured concerning a Hurricane case the insured shall be considered the plaintiff for the purposes of the cost split under this order and the insurer shall be considered the defendant. It is generally customary in the event of settlement that a condition of settlement be that the insurer pays court costs and costs of the SSP/mediation.

## SECTION 4. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 15 days of the filing of the defendant's responsive pleading (or within 15 days of the receipt of a copy of this Order by the defendant or its counsel, including by electronic or other means -- whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process for good cause shown. This motion may be decided on the briefs without hearing. Unless the Court authorizes an opt out, then the parties shall participate in the two-staged Streamlined Settlement Process, which is described as follows:

### I.   First Stage: Settlement Conference

Within 45 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference ("ISC") among all parties and their counsel. Within 15 days of the Disclosure Deadline counsel shall meet to confer and discuss a mutually convenient time, date, and manner for the conference. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms.

Counsel for each plaintiff and for each defendant must have full authority to resolve the case from their clients, who shall be readily available by telephone if circumstances for the ISC require assistance.

The ISC shall include a particularized demand from the plaintiff that is itemized by each claimed policy coverage category then known to be remaining in dispute and/or any existing demand for extra-contractual damages that are then claimed to be incurred. The demand shall be submitted by email to the opposing counsel on the form attached as Exhibit "C" at least 72 hours prior to the scheduled ISC.

The attorney for the insurer will conduct a call prior to the ISC with the relevant client representative to ensure the client representative has reviewed the ISC demand. The client representative will inform their counsel concerning additional information requested to evaluate the claim, and their counsel shall convey that to opposing counsel at the ISC or in writing. The insurer shall submit by email to the opposing counsel an itemization of the prior payments awarded by coverage category on the form attached as Exhibit "D" at least 48 hours prior to the scheduled ISC.

The defendant shall respond at the ISC to briefly detail why it does not agree with the demand by category. The plaintiff may request that this response be reduced to writing, and if requested it shall be answered within 15 days of the ISC.

All ISC communications shall be covered by mediation confidentiality. The Special Masters may order any particular modifications in this protocol for specific cases, parties, or attorneys.

### II.   Second Stage: Mediation

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The parties shall provide the Special Masters written notice (including by email and preferably jointly) of completion of the First Stage along with a request for mediation. The Special Masters may assign a neutral within 60 days of the Disclosure Deadline even if neither party submits the written notice. The Special Masters shall then assign each Hurricane Case to an Assigned Neutral, and it is the goal that Assigned Neutrals complete mediation within 90 days of appointment. The Special Masters (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to

schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties. In the event a counsel provides an insufficient number of available dates the Special Masters may authorize an extension of the SSP period for that case or may require mediation on a date selected by the Special Masters, including on a weekend day.

### A.    Conduct of Mediation

After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Masters the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone or video communication, if circumstances for that particular mediation require assistance.

To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Process, the attendees may be invited to each make opening statements but there shall be no live witness testimony.

### B.  List of Neutrals

The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators / appointed neutrals) for the SSP:

The Special Masters and any other person qualified pursuant to R.S. 13:4165(F)(5) that is designated by the Special Masters after consultation with the Court (including those identified in the attached list).

### C. Neutral Training

The Special Masters may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Masters may form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Masters may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Masters may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Masters may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

### III.    Extensions of Time

Upon a joint request by the parties, or for other good cause shown, the Special

Masters may modify any deadline specified in this Order.

## SECTION 5. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

Any request for the appointment by the Court of an Umpire shall be made in writing no later than the deadline for filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Masters via email at HurricaneIda@colelaw.us and jlitchfield@berriganlaw.net . This deadline may be extended by a Special Master in exceptional circumstances for good cause.

If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures.

An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

A written report and recommendation concerning the Umpire's appointment shall be issued to the parties and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge for good cause following a motion opposing the report and recommendation filed within seven days of transmittal of the written report and recommendation. Alternatively, a Special Master may issue the report and recommendation to the Court, and the Court may directly issue an Order concerning the appointment.

**IT IS ORDERED** that the appraisers appointed by the parties are required to complete their work and submit any disputes to the Umpire no later than 60 days following the first Initial Disclosure Deadline under this Order (105 days following the filing of the defendant's

responsive pleadings). The appointed Umpire shall issue his report no later than 21 days from the submission of the dispute to the Umpire. This period may be modified by the Special Masters upon a showing of good cause.

**SECTION 7.**     **CLERK OF COURT AND NOTICE**

A Plaintiff filing a Hurricane Case should note on its cover letter, in _**ALL CAPS**_ and _**RED FONT**_, that the matter is a "HURRICANE CASE". Each caption and on each pleading, **"HURRICANE CASE" in bold print shall follow the docket number.** If a Special Master learns the Order has not been entered by the Clerk of Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

In all subsequently filed Hurricane Cases, a copy of this order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

The Clerk of Court shall transmit via email, at least weekly, to the Special Masters the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

Any party making any filing or submitting any memoranda in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Masters in the same manner as enrolled counsel via email at HurricaneIda@colelaw.us and jlitchfield@berriganlaw.net.

**SECTION 7.**     **COURT SUPERVISION**

The Disaster Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. **All provisions of this Order shall be applicable to all Hurricane Cases whether then pending or thereafter filed.**

**SO ORDERED** on this ___ day of <u>December</u>, 2021, at New Orleans, Louisiana.

_____                    _____
HON. ELLEN M. HAZEUR                     HON. RACHAEL JOHNSON
District Judge, Division A                    District Judge, Division B

_____                    _____
HON. SIDNEY H. CATES IV                  HON. NAKISHA ERVIN-KNOTT
District Judge, Division C                    District Judge, Division D

HON. OMAR MASON
District Judge, Division E

HON. JENNIFER M. MEDLEY
District Judge, Division F

HON. ROBIN M. GIARRUSSO
District Judge, Division G

HON. MONIQUE BARIAL
District Judge, Division H

HON. LORI JUPITER
District Judge, Division I

HON. NICOLE SHEPPARD
District Judge, Division J

HON. BERNADETTE D'SOUZA
Chief Judge and District Judge, Division K

HON. KERN A. REESE
District Judge, Division L

HON. PAULETTE R. IRONS
District Judge, Division M

HON. ETHEL S. JULIEN
District Judge, Division N

IN RE: HURRICANE IDA CLAIMS     :      STATE OF LOUISIANA  FILED

                               :      PARISH OF ORLEANS APR 21 AM 11: 32

                               :      CIVIL DISTRICT COURT CIVIL

                                                     DISTRICT COURT

## EXHIBIT "B"

## STIPULATION FOR MEDIATION

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned parties:

1.    The parties agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Case Management Order (and any relevant supplements).

2.    No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and except as provided by Order of the Court it shall not be revealed by the neutral unless and until the party who provided the information agrees to its disclosure.

3.    The mediation process, for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence, shall be considered a settlement negotiation. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. However, any evidence which would otherwise subject to discovery or admissible shall not be excluded from discovery or admission in evidence solely because it has been referenced or discussed during this mediation process.

4.    The appointed neutral and their agents shall enjoy the same immunity as judges and court employees, whether under federal or state law, for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5.    The parties shall not:

1

(i) Call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation;

(ii) Subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation; and

(iii) Offer into evidence any statements, views or opinions of the appointed neutral.

6.  The appointed neutral's services have been made available to the parties through the dispute resolution procedures sponsored by the Court. In accordance with those procedures, the appointed neutral represents that he or she has taken requisite oaths.

7.  Any party to this Stipulation is required to attend at least one session and as may be directed by the Special Masters as many other sessions thereafter as may be helpful in resolving this dispute.

8.  An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.

**PLAINTIFF** _____        **COUNSEL FOR PLAINTIFF** _____

Date: _____                Date: _____

**DEFENDANT** _____        **COUNSEL FOR DEFENDANT** _____

Date: _____                Date: _____

**CONSENTED TO BY:**

**NEUTRAL APPOINTED BY THE COURT** _____

Date: _____

2

IN RE: HURRICANE IDA CLAIMS        :        STATE OF LOUISIANA **FILED**

                                   :        PARISH OF ORLEANS 2022 APR 21 AM 11: 32

                                   :        CIVIL DISTRICT COURT
                                                    CIVIL
                                            DISTRICT COURT

## EXHIBIT "C"

## FORM FOR ISC DEMAND BY INSURED

| Category | Policy Limits | Damage(s) | Prior Payments | ISC DEMAND |
|---|---|---|---|---|
| A. Property | | | | |
| B. Other Structures | | | | |
| C. Personal Property | | | | |
| D. ALE | | | | |

Claim for Statutory Bad Faith Penalties on Late Prior Payments

Claim for Statutory Bad Faith Penalties on ISC Demand

Claim for Attorney's Fees

Total Claim for Other Damages (describe below):

TOTAL

This demand is for the purposes of mediation only and is covered by mediation confidentiality. It may not be used for any other purpose. It is rescinded if the case does not settle as part of the SSP. The plaintiff reserves the right to modify the demand based on changes in circumstances or supplemental information. The plaintiff reserves the right to asserts claims for expert costs, judicial interest, and mental anguish / economic damages and related penalties pursuant to R.S. 22:1973 at any trial of this matter even if they are not listed above.

3

IN RE: HURRICANE IDA  CLAIMS  :  STATE OF LOUISIANA FILED

: PARISH OF ORLEANS 2022 APR 21 AM 11: 32

: CIVIL DISTRICT COURT

CIVIL

EXHIBIT "D"  DISTRICT COURT

## FORM FOR ISC DETAIL OF PAYMENTS BY INSURER

| Category | Policy Limits | Prior Payments | Date(s) |
|---|---|---|---|
| A. Property | | | |
| B. Other Structures | | | |
| C. Personal Property | | | |
| D. ALE | | | |
| OTHER: | | | |

Other Detail: _____

TOTAL _____  _____

4

THE LAW OFFICE OF
**BRUCE C. BETZER**
A Professional Limited Liability Company

RECEIVED
JAN 0 5 2023
CLERK OF COURT
CIVIL DISTRICT COURT

Bruce C. Betzer
bruce@brucebetzer.com

3129 Bore Street
Metairie, Louisiana 70001
www.brucebetzer.com

Telephone: (504) 832-9942
Facsimile: (504) 304-9964

December 29, 2022

**Via Facsimile (504-592-9128) and U.S. Mail**
Clerk of Court for Orleans Parish
**Attn: Civil Filing Dept.**
421 Loyola Avenue, Room 402
New Orleans, LA 70112

Re:   Chateau Management LLC, et al v. Underwriters at Lloyds of
London, et al **NEW CIVIL SUIT/FAX FILING**

Dear Sir/Madam:

Enclosed please find a Petition for Damages to the above captioned matter, which I hereby request that you file into the court's record this date and return a confirmation of filing back to this office via fax with all costs and fees due at this time.

The original and all appropriate copies of the Petition for Damages as well as my firm's checks for all costs due will be forwarded via first class mail.  Upon your receipt, please stamp as being filed this date, effect service of the Petition for Damage and the Hurricane Ida Case Management Order on the parties stated and return a conform copy for my file to this office in the self-addressed, stamped envelope provided with the original package.

Thank you for your assistance.  If you have any questions, please do not hesitate to contact my office.

Cordially,

Bruce C. Betzer

BCB/mst
Enclosures



RECEIVED
DATE
SEP 11 2023
E.B.R. Sheriff Office

